The next case on the docket this morning is 518-0227. In re the guardianship of C. D. M. A minor child. Are you guys ready? Okay. Mr. Hanson. May it please the court, I'm Jim Hanson. I'm here on behalf of Linda Williams, guardian of the state of a minor, C. D. M. By way of background, your honors, this case originated in Jefferson County with a petition to adjudicate Wardship where the mother of this child had the child while she was in the hospital and had issues. And so DCFS, the next day after this child was born on July 9th, I think, 2010, the next day they filed a petition for wardship and the case proceeded from there. What brings us to this court today is that in that earlier case, my client intervened at some point in time, a year or so into the case or sometime later in the case. It's in the statement of facts. The only relevance to that is that between the time that she intervened and the ultimately in the case, there was a paternity test done that determined that the party, Mr. McDonald, was not, in fact, the father of this child. The GAO chose not to file any action to to to change that. In other words, it was voluntary acknowledgement paternity basically said administratively there was a parentage of this person in the court proceeding. It was a DNA test was done and it was basically found by the judge that he was not the father. But it proceeded on a later time on the mother filing a motion to vacate that V.A.P., which was denied by the judge because the mother was complicit, I guess, in that the V.A.P. In other words, the judge found that she did not prove her case of there being some fraud or duress or what have you. She alleged that, but it was not proven. So at a later point in time, my client is appointed is first the DCFS is appointed guardian. Later point in time, my client is appointed guardian. Mr. McDonald has given some visitation rights. Ultimately, the case resolved, resolves, and my client is appointed guardian. Going back to your your point about the father being awarded visitation rights, did he throughout this period continue to see the child on a regular basis early on? Early on, the record shows what time he did see the child. I don't have any history exactly when that occurred. So I guess the answer is yes. From time to time, he did see the child. He had time. Later on, the case got moved to Washington County because that's where the child was living. That's where the guardian was living. And the father, the V.A.P. father, the non-biological father, but he is the father as far as the V.A.P. was not vacated, he filed a petition to modify it, saying that the visitation was not working for his new schedule or what have you. And that's when I came along, this is some years later, and filed a, we had gotten some information that there was another person who was the father from the mother who's not associated with the case anymore. The mother, which is the grand, which is the daughter of my client, out of town, out of contact with the kid, no longer involved. But somehow or another, my client finds out that there's another person that could be the father. So we filed a, I filed a petition to declare the current father, the V.A.P. father, not to be the father, and to, upon information, please, this is the father. We're going to set out to find him, get him, and get a test of DNA done on him. That's when we got this motion filed to dismiss, saying it's been too long or beyond the two years provided in the statute that my client, the guardian, had knowledge of the existence of this non-father, and therefore, she was barred from bringing that action on behalf of the child. That is the issue in the case. The issue in the case is whether the knowledge of my client, the guardian, is imputed to the child for purposes of bringing an action to his next friend on behalf of the child. Mr. Hanson, one of the things that, I'm looking at the statute in this case, and it's a little different than the other statutes we see with regard to minors, like impersonal injury actions where they have two years after they turn 18. This statute, correct me if I'm wrong, stops at 18. In other words, there is no... That's the way the second part seems to read. When I was preparing this, I was looking, I was saying, well, why is that? But... Right. That was my question. But, you know, I didn't, I did a little look, and actually, this is kind of sad, and I'm looking at that issue later, but I didn't know that it directly applied, because my argument is that the child has a cause of action in their own right until they're 18 at least. But because they're a child, who else can bring it but a guardian or a minor? Right. And so the argument becomes, is the child barred because the guardian, the particular guardian... So if this kid was taken away from my client, and the DCFS was appointed, you know, lots of issues come up, but I'm going to suggest... Let's take that analogy. If DCFS is appointed early on, which I guess is the argument here, and they know that, you know, this gentleman is not the biological father, why don't they bring it? I don't know why they didn't bring it, but my research suggests to me that not bringing it is not as dispositive as bringing it and having adjudication, because the case law is replete with the law of the case, you know, what's happened, and if somebody brought the action, they had the authority to bring the action at the time, and it was ruled on, then you'd have an argument, that's the law of the case, we can't revisit that issue. But in this case, we have a child who's got a... I don't know what term to use, but a non-father-father that she has no ability to try to change, and not because of any of her own conduct, but because of the conduct of others. One of the issues is not really... Conduct being of the natural mother who agreed to a voluntary acknowledgment of paternity. Right, right. The father. But in my cases, in particular that NRAMM, it was a case where DCFS came along after the fact, and I think that case is very helpful in understanding what my argument is. DCFS comes after the fact of a BAP in that case, and the father makes the argument that DCFS has already been determined. But I think that case holds that, no, it wasn't determined as these would be the child because there's no privity between the mother and the child. And I suggest the argument would follow that there's no privity between my client, the guardian, and the child as well. I mean, it's a plausible argument, and it serves the ends of justice that this child can find or attempt to find and adjudicate their father from a known non-father, which is puzzling. I mean, I don't know why the original DCFS, or not DCFS, but DCFS and the guardian at the original time didn't file it. To me, it would have just been logical. I don't know how this is going to play out. Because, Court, you may realize, and I know you do, is that even if the father was not the father, if it was in the best interest of some sort of custodial arrangement to be allowed, that could have still theoretically happened. But that's not what was decided. It was not decided. So in this case, the issue is whether or not this child, in an action brought by my client versus some other person who might be standing in her shoes, is borrowed. And I was trying to think of scenarios where this would be consistent. But then what if my client was no longer the guardian and the person that came along didn't know of the prior deal or wasn't imputed to them or constructed knowledge or whatever and brought the action, they couldn't say that two years prior to that action, still being brought on behalf of the child's next friend. The only bar that would occur, I'm sorry I got off on a tangent, folks. I skipped my statement of facts. But I think you understand the issues as far as the facts go. The only issue there is whether or not this child would be borrowed or not borrowed because of these extraneous issues. And also when I was reading that. Excuse me one second. Hypothetically, what if the mother didn't know who the father was, as in this case, and they were married and she wanted this man to have all the rights that any other father would have? That includes his rights. That includes his obligation to support this job until the child's 18. Right. It's not relevant in this case. Why can't that happen? Why can't a mother allow a, quote, father to sign a voluntary acknowledgement of paternity and act as the father? They can. They have. There's a number of cases where that's happened, but where it's been challenged at a later point on behalf of a guardian or DCFS, it's been said the mother cannot bind the child. In other words, the mother can't, in my argument, because the mother can't do away with the right of the child, the fundamental right of the child under the intent of the Paternity Act is to have a relationship with your parents, not your possible parents. So, I mean, that's my response. I don't know that it's particularly. Well, no, that's what I wanted to ask you. But then we have to melt that with this whole statute of limitations, which is a new or should have known. It's like a discovery. But a child can't, I mean, my argument is a child can't be hung with that because my client should have known. Well, perhaps you're saying this is unconstitutional. I don't think it's unconstitutional because I don't think it applies. I mean, my argument is part one of that statute vests in the child, the child, not the knowledge. And I think we're being given the knowledge of the petitioner. The petitioner is just the next friend of the child. The actual petitioner, I would suggest, is the child. The child can't bring it in their own right. But if the petitioner was a child and could stand up in front of the court and say, I don't want a child to exist, you'd have an issue about when this child knew. This child is now nine, but maybe the child didn't know or maybe still doesn't understand the totality of it. But we've always protected children and their rights to assert rights that are relevant and important to them. And knowing your parent and being able to adjudicate your parents against you is an important thing. And seeking your parent's love, not love, but support and other things that go along with parentage. So I think I understand. You're saying that the word petitioner in the statute of limitations portion, it's your petitioner, whoever the petitioner is unless there has been a previous decision. I am, and part of the reason I'm making that argument, it's the only thing that makes sense with the overall policies and construction. But I did want to draw the court's attention to something I found in my preparation, which I wish I had found earlier, and that is in that M.M. case, which I cite to you in my brief. At the end of that case, in the blurb I cite, it says, and I'd like to read this to you because I think it might be useful to you. I'm reading out of the M.M. case. It says M.M.'s J.A.L. What's the record? Would you give a citation? Yeah, it's 401 Illinois Appellate 3rd, 416 at page 422. That's a 2010 First District case. Not only read this because this is what I was reading last night, it made me kind of go, huh, interesting. M.M.'s J.A.L., however, contends that because M.M. was not a party or in privity with Robert M. or Shantay M. in this cause of action, she is not barred from challenging that judgment. We agree. There is no dispute that M.M. was not a party to the signing of the VAT. We also find M.M. was not in privity with Robert or Shantay. That's the mother and the peer to father. When they executed the document, a line of package cases hold that a minor is not in privity with his mother in a paternity action and, therefore, is not barred from bringing his own paternity action. The C.E. Department has a list of cases there, and that's what I was reading. When I was reading into those cases a little more in depth in preparing, I found this case listed there called Leaseman. And the Leaseman case Okay, is that a case you've argued in your brief? It's not argued, but it's listed in the cases cited for that proposition. The proposition is that the privity, which I argue You haven't given notice to the other side of the jury. Well, I argue privity. I'm just saying that this is a case in there. Okay, go ahead. No, I didn't amend my brief, Your Honors. No, no, go ahead. Okay, I was just saying that if you read those cases, which I had read them before, but I didn't pick up on the issue, it speaks about Okay, so what case are you referring to now? Well, the Leaseman case, which is cited in the M.M. case. On page 422? Yes. What's the site of the Leaseman case? It's the site of the Leaseman case. It's 218 Illinois Appellate 3rd, 437 at pages 439 and 440. And what I'm suggesting to you is when that explains a little bit more about that proposition about privity and barring or what have you, it basically said In the blurb in that, the blurb says, support for the holding is found And I'm still reading from the M.M. case. Support for the holding is found in the differing interests of the minor and the mother In addition to the differing statute of limitations for minor and the mother to assert paternity actions. So when you go back and read the Leaseman, it talks about similar issues, that there's different interests between a mother. Sometimes a mother won't want some man involved in the kid's life and likes something else better or different or that they think is better. And then later, are we going to bind the child to that decision? And I'm submitting to you, when you read the Leaseman case, that it suggests you're not. You know, I actually printed out the part of the Leaseman case where I think it's relevant, but the counsel didn't get that. Didn't get that other than as she would have been doing. Well, I'm going to give her the opportunity to respond if you want to go ahead and argue it. I'd like to argue it if I could, but I did not intend to deceive anyone. I just was reading the preparatory. I understand, but I want to give you the opportunity. Okay, so I will just read, I'm going to read a little bit from the Leaseman case, but I think it's directly relevant to this case. If I say directly. Case 439-40. That's the citation. And when I say directly relevant, it's kind of the interaction between the statute of limitations argument and the binding effect of the determination or the latter determination. It says, children are not imprivileged with their mothers, and I'm reading from Leaseman, and thus are not barred under race judicata doctrine from bringing paternity actions when their mothers have filed previous paternity or support actions. Now, it did not say had not filed. It just said had filed, so I'm making the argument it could be converse. Defender argues that the act does not permit successive actions to be brought by different parties statutorily authorized to bring an action under Section 7. In essence, this is an argument that the bringing of an action by one party precludes the right of all others. We find this argument to be totally contrary to the legislative intent behind Section 7. The Illinois Parentage Act of 1984 expressly to accord several named parties, each having diverse and potentially divergent interests, the right to establish father-child relationships. And I'm making the argument thus the non-father-child relationships as well. Therefore, the clearly expressed intent of the legislature would be denigrated if the child statutory right to bring an action could be precluded by virtue of an action brought by either the mother or the department or DPA, which is subjectly dismissed on procedural grounds. Courts have determined that Section 7 of the act allows successive causes of action by different parties, particularly where the issues of parentage has not been factually determined because of dismissal of the prior seat. In this case, parentage was not factually determined. We had a fact that was challenged. It was not. But there was no petition to establish the parental right. We just have the fact, which we know, we know, based on the record, is not true. The definitive basis of the hypothetical controversy wherein the future father is subjected to successive paternity actions upon the same child brought by a series of custodians. However, this appeal does not concern such a case, and we cannot permit hypothetical worst-case scenarios to be the basis upon which we decide this case. Moreover, it has been noted in dissolution proceedings that a minor is not privy to the mother when minor's interests are not represented by a GAL. Not represented by a GAL. In this case, the argument I'm making is that the GAL did not file the petition to adjudicate the fact that he's not the father. So it's not been determined. So basically the argument is that the child has an independent cause of action, and I could not find any case law directly on point about the imputed aspect. I did cite to the court some other matters where imputed knowledge was not binding on the child, but those are just by way of argument. But as far as the policy goes, Your Honor, I submit to you that this child is now nine, and I don't know that I can get the father or get him into court and get him adjudicated, but I think you can understand that sometime in a child's life, either now or later, that's an important issue. When you were reading Leisman, did you – and just for the record, it's L-I-E-S-M-A-N – did you notice that this might have been under a different statute or a previous section of the parenting statute? I didn't know whether it was 1984 was the one that was changed or not, but the issue – you know, my feeling is that the argument with the issues were substantially the same. I don't know if the statute – I know the statute changed somewhere, but even had it changed, I don't believe the change was that the child did not have a right to bring an action to adjudicate parentage. Okay. Thank you, Your Honors. Okay. Thank you, Mr. Hanson. You'll have a chance to make further comment. Come up, Ms. Stone. I think that because Mr. Hanson argued this case, the full citation is Department of Public Aid, Ex Rel, Skelton v. Leisman, L-I-E-S-M-A-N. It's found at 218 Illinois Appellate 3rd, 437. Would you like an opportunity to file some supplemental brief with the court in light of his argument today? Yes. If the court's going to take that case into any consideration, I would like that. Well, I think that because you argued it, we're going to have to at least consider it, but I think it's unfair not to allow you to respond. Thank you. So how many days would you like? Whatever you tell me, I'll make it happen. Fourteen days? Perfect. Okay. So we'll have an order issued that respondent is allowed 14 days to respond and will speak strictly to his argument made here today on that case. Okay. Sounds good. Thank you. Okay. Okay. May it please the Court, Mr. Hanson, I'm Paige Strong, and in this case I represent the father, Dwayne McDonald. I think from the get-go we're making this case way more complicated than it needs to be. I think we're doing that in an effort to avoid clearly what the statute says. I don't think the issue is whether a mother's knowledge is imputed to that child or whether the current guardian's knowledge is imputed. I don't think any of that matters. I think the initial guardian ad litem who was appointed when this child was one day old, I think their knowledge is imputed to the child because that's the point of having a guardian ad litem. It is to protect the interest of the child. We had that guardian ad litem here in Jefferson County from 2010 until around 2017 when the case was transferred to Washington County and we had a second guardian ad litem. So essentially every day of this child's life after day one, she'd had a guardian ad litem. The whole purpose of a guardian ad litem is to protect the interest of the child. And I cited one case all the way back from 1918, the Flynn case, that says very clearly that the guardian ad litem's actions do bind the child. So I think that is important to know going into this. But I also want to address just a few questions that came up there because I think this case is so complicated, the procedural history is complicated, that maybe it helps to kind of cut through it. I need to tell you, just from the very beginning, the child in this case is a Caucasian child. Her mother is. Dwayne McDonald is an African-American man. To this day, we do not know who the biological father is. Nine years later, we do not know. So let's think about that. We have, from the get-go, very clearly knocked the biological father, but took on the responsibility by signing the VAT and the birth certificate. Mom was complicit in that. I'm not saying that binds the child, but I'm saying that's how this started. DNA testing was done because of the obvious discrepancy, and it was determined that Dwayne McDonald is not the biological father. We have known that since 2010. The guardian ad litem knew it. This particular guardian knew it shortly thereafter because she intervened in the case in 2011, so she would have known as soon as she intervened. What the child knows, I think, is based on what all of her legal representatives know. It would be great if we could bring her in here and ask her what she knows, but I don't think that matters. I think the guardian ad litem's knowledge from day one until today is imputed to that child. Now, the fact that the guardian ad litem here in Jefferson County did not file a motion to declare the non-existence of a parent-child relationship doesn't mean that this hasn't been litigated. It has been litigated. Mom tried to undo that back. There was a hearing. It was denied. That's litigation. Never has anyone come here and said, I'm the biological father, let me be dad, let me prove it. That's never happened because we don't know who that is. So what we have is a 9-year-old girl who knows this man as daddy, and he has participated in her life and he's been a part of this all along. Let me ask you, under the Parentage Act, is there any definition of the role of the guardian ad litem as we have in the Marriage and Dissolution Act? We have a definition of the role of the guardian ad litem under the Marriage and Dissolution Act. Is there any such definition in the Parentage Act? Off the top of my head, I don't know, but I do know that many things are handled in the same way. The Parentage Act will refer to the IMDMA for guidance on how to do things, and it tends to be in lockstep. I don't know if there's a particular statute off the top of my head. I don't know. I think that's in the Marriage and Dissolution Act, for example, it says the role is to give a report, talk about best interests. I mean, it's not to bring a cause of action for non-parentage, for example, or to bring any causes of action. So one of your arguments is that the child had a GAL, and the GAL could have brought the action. Are you aware of any case law where such an independent cause of action has been brought by a GAL in any? Oh, I've seen it probably six times this year in Jefferson County Court. In fact, I just wrote one. As part of a juvenile abuse and neglect case, that's where they generally come up. And the guardian ad litem is empowered to act on behalf of the child to address exactly this thing, which is what happened here in this case. I just filed one myself. It happens. Now, the choice is the guardian ad litem. Okay, and you lost me on it happens in the child. In a JA case, quite often we don't know who the father is. It happens all the time. Or we believe we know who the father is, and we get DNA results that say not the case. Now, the guardian ad litem. Do you file these actions, a GAL file? Yes. Files a petition to declare them non-existent. It happens all the time. It is the GAL's choice whether to do it because it's not based on just science. It's based on the best interest of the child. And as often as not, that's a complicated decision about whether you file it. In this case, you wouldn't file such a thing because there's one man standing here, and he wants to be the daddy, and that little girl thinks he is. So that would be a best interest determination that would lead you to not file such a thing, provided he was a suitable person. My belief is that that's exactly what happened in this case, that the guardian ad litem didn't file it for a reason, not just slacking. Even if it wasn't the guardian ad litem, it's not the only one I went hanging on. This particular guardian has been the guardian of this child since 2013. She had four years and three months to file a petition on behalf of this child, and she didn't do it until 2017. Why did she do it? Because dad wants more time, because they're at odds about how much time he gets to spend with his child. That's why. Otherwise, it never would have come up. Never. She had the opportunity to do it well before the two-year time period. She didn't do that. And that's what the judge in Washington County found, that everybody has known this since 2010. There have been multiple players with the opportunity to file this motion. They had two years to do it, and no one did it. And I don't know that it matters when you look at the statute. I don't know that this is a factor, but I think it's important. There isn't another dad. There isn't one. Even if there was, is there anything wrong with having a legal father and a biological father? Not necessarily. Now, I think we might have different facts. If we did find a new dad and DNA said he was a biological father, he'd have a cause of action and have two years to file it, to have Duane McDonald declare not the parent. A new DNA dad, once he discovered it, would have the right to do that. We don't have one. But I don't think that the statute reads that the child has until she's 18 to do this. If you consider it, I don't think it means just that. If you consider all of the case law about what a guardian ad litem means, that's the whole point of having a guardian ad litem, is to look out for the interest of the child. In this case, I say that's exactly what happened. The Jefferson County GAL looked out for this child. The Washington County GAL looked out for this child. And we can't ignore that. The cases that I cited in my brief show that the guardian ad litem actions are, that is the act of the child. So this has, in fact, been adjudicated. It has been litigated to death. It just wasn't done in time to accomplish what the petitioner is trying to accomplish. But that doesn't change what the law is. It doesn't change what the statute says. And it certainly doesn't change the public policy behind why we even have this. We have this statute so that you don't have a 15-year-old child to find out all of a sudden, oh, that's not my dad. He's always known. That's the whole point of that, to not tear up families. It is to say, if you know something, do something, so that families are not damaged. And in this case, that's exactly what they're seeking to do. They're seeking to take away a father who has been an active participant, who's done everything he's supposed to do, by alleging that all the other people didn't do their job, and so it ought to continue. The statute of limitation should continue. It doesn't make sense. There's no law to say it. And it doesn't go along with public policy at all. Mr. Hanson refers repeatedly to NRA MM as support for his position. But in MM, what I'm saying should have happened, happened. They did file a petition to declare the nonexistence of a relationship. That didn't happen here. So that doesn't really help his case that much. The facts aren't on point with the facts of this case. In fact, it actually supports us. This is how it should be done. Had a guardian ad litem done so, we would have been stuck with that. We would have had to live with those results. That's not what happened here. So MM doesn't support his case at all. So are you saying that because this child from 2010 to 2017 had a guardian ad litem, that the two-year statute of limitations would have run from the date they knew he was not the biological father, whatever that date was, to 2017? Yes, that's exactly what I'm saying. So two years passed. So it was like 10-25-2010. Mm-hmm. So we've got seven years when there's an imputed knowledge to the GAL. Absolutely. That's absolutely what I'm saying. And that's what the Washington County judge who ruled this way said. There's been seven years to do this, and it didn't happen. You can't do it now. And I believe that's the right decision. So we would ask that you would affirm the trial court's ruling dismissing the motion to have him declare the non-existence of a parent-child relationship. It was the right decision. So we'd ask that you would affirm that. Thank you. Mr. Hanson? Mr. Hanson, do you agree that part of the issue in this case is the responsibility or obligation or powers, if you will, of this GAL who was appointed from 2010 to 2017? I do not believe that the GALs can take away from this child their independent right to bring an action. And I believe that the two-year limitation does not apply to the child because they're a minor based on these cases I've suggested to you. This whole concept of riveting.  But if, in fact, they have an attorney who's to represent their best interests, if that's the deal. But, Your Honor, best interests does not even come into play in connection with parentage. It only comes into play once parentage exists or doesn't exist or in other matters. In fact, there's the... Well, who speaks for the child under the Parentage Act but for a GAL? Somebody has to speak for the child. Right, but I guess I'm saying that the next friend or GAL, somebody has to bring the action, but that doesn't mean that the action is lost because they are remiss in bringing the action or somebody disagrees that they should have brought it or not brought it. Except that there's a statute of limitations. But not for a child. They've got until they're 18. And if it's brought as an ex-friend, that's my argument anyway. The same thing you brought up earlier that ends at 18, the two-year does not extend. My argument is that we're not going to treat illegitimate children differently than legitimate children. That would be a constitutional argument. Are you saying that this is two separate statute of limitations? One is for the petitioner, one is for the child? Well, the first part says that the petitioner has brought it. In this case, the petitioner I'm submitting to you is the child. And it cannot, the statute of limitations cannot run against the child until they've got until they're 18. I'm saying they're not restricted by the two. But that's the issue in the case, kind of whether or not that applies to this child. I mean, but if I could address some of the issues that were raised, Your Honor. I'm not here to argue how good a father, bad father, how good a job he's done or what issues my client might have with the father because that was not anything that was before the court. It was merely this issue of whether or not my client had the right to bring that action. And I believe that the court, I believe that the court was determining based on her bringing the action as opposed to her bringing it on behalf of the child and imputing that knowledge, although we argued that in the imputing argument. Well, she's arguing the powers of a GAL. And since the GAL knew it, you impute that because of the, what a GAL does. I submit it's a reverse argument. She is arguing that because the GAL knew it, the child knows it. But this was not a case where this action was brought on behalf of the child. This action was brought by someone else and involved the child. And then we had the mother bring an action to declare, to vacate it, which was not on behalf of the child. It was in her own right. There's been no determination other than the VAB as to parentage or determination of no parentage. I mean, I think it's difficult to argue that because the child was a party to an action, that they were the petitioner. And if they were the petitioner or somebody was bringing the action on their behalf, they would be bound by the law of the case and there would be privilege. But because it was not brought on their behalf, that argument doesn't, I don't believe that argument. Well, that's your argument as to the mother's case, that there's no reason to cut them because it wasn't brought on behalf of the child. And also GAL's case as well, because there was nothing brought on behalf of the child. It was just appointed as GAL to represent the interest of the child. There was no action brought that was adjudicated one way or the other. We still have that. Other than the VAB, there's no adjudication one way or the other until we brought the action to adjudicate what is known to be true, which kind of just hits me in the face all the time. We all know this is not the father. Well, what can we do? What can we do? And we don't have to decide what is in the best interest of the child. If there was an argument made, good father, that's a good deal. That only goes if we get to the best interest. We're talking about now whether the child has the right to determine whether or not the father. And I don't know that the father will be located. I got cut off on my discovery attempts early on because of the ruling, which is the way it's supposed to be. But this is a hypothetical. Between the time my client intervened in the case and when she got appointed guardian two years had passed, she had no standing to bring an action on behalf of the child in those two years. So, quite frankly, I will grant you that time has passed. And if it was the father or the mother bringing various actions, they would be barred. I'm asking Your Honors to look at this with respect to the child and the child's rights and what the statute intended in light of the cases I cited and not the history, but the policies that are kind of argued in those cases. It just doesn't seem, I hate to use the word equitable, to bar this child because of the lack of action or the wrong action. Thank you, Your Honors. Thank you. I want to tell the parties that subsequent to briefing in this case, the Illinois Supreme Court just released an opinion. I'm going to give you the citation on it. It's called Alex Nichols, N-I-C-H-O-L-S, formerly known as Alexa Sprigman v. David Farringham. It's 2019, Illinois, 123-990. It is a case that, while it may not be final as of yet, I'm not sure, Justice Carmeier goes through an extensive analysis of what the duties of a guardian ad litem are and the history of a guardian ad litemship in detail. And, of course, I was the one reversed, so I know this case. But if you believe that this case would be relevant to your arguments, I'm also going to grant you 14 days to provide supplemental briefing as to this case and whether or not it may or may not be relevant. I'm not saying it is. I'm just saying that we now have an extensive analysis of GAL abilities and what they can do, what they can't do by our Supreme Court. But you did not have the opportunity when the briefing was going on. This has just got released, okay? So you have 14 days restricted to this case only. This matter will be taken under advice, but we'll take it. Do you have a question, Ms. Carmeier? Would you like two different documents from me to respond to Lisa? No, you may respond in one. Okay. Got it. Thank you. Is that acceptable to you, Mr. Hanson? Mr. Hanson, if she combines her argument with Lisa's. I was saying when I was reading that Lisa's case, there were cases referenced in that Lisa's case, and I needed some addition to the very Lisa's case. Okay. We have that. In other words, Lisa sometimes cites to other cases. Understood. I don't want to limit my argument in that regard. Understood. Any questions from counsel? No, ma'am. Okay. We're going to take a short recess. And then if counsel for the next case wants to get situated, it's great.